*H. B. Troutman,* contra. .

---

## 5939.   BRAGG *v*. THE STATE.

1. Unless prompt objection is made to an irregularity or impropriety in the progress of a trial, when known to counsel, it will be treated as having been waived.

(*a*) "To ask counsel publicly in the presence of a jury trying a case whether the jury should be allowed to disperse is error;" but where the judge, on making such an inquiry, called counsel to the bench before any response had been made, and the jury did not hear the response, and it was there agreed by counsel on both sides that the jury might disperse, the court did not err in overruling a motion, made upon the reassembling of the court after a recess, that a mistrial be declared on account of the judge's question to counsel.

2. The evidence authorized an instruction upon the law prohibiting the keeping of intoxicants at a place of business, and the instruction given was not prejudicial to the accused.

3. The jury were properly instructed on the law as to the scope and effect of the defendant's statement to the court and jury, and the court was not required, in the absence of an appropriate and timely written request, to give any further instruction on that subject.

4. The statement of a defendant on the trial of a criminal case is not evidence, and the judge is not required, while giving instructions as to the law applicable to the consideration of the evidence, to reiterate reference to the defendant's statement, and to incorporate such reference in each

and every instruction relating to the evidence and the law applicable thereto.

5. While the jury have the right to consider the defendant's statement apart from the evidence, and may base their verdict upon his statement alone, even though it be unsupported, still, when the jury had been fully and correctly instructed to this effect, it was not error to charge as follows: "As to the question of his being guilty upon either one of the theories about which I have charged you, you look to all the evidence and all the circumstances in the case, all the evidence for and against; and in this connection you have the right to consider the prisoner's statement." This was not subject to exception on the ground that it deprived the jury of the right to consider the defendant's statement apart from the evidence, or on the ground that it tended to depreciate the statement.

6. In the absence of an appropriate and timely written request for additional instructions, the charge of the court upon the subject of reasonable doubt was not, for any reason assigned, erroneous.

7. Bills of lading, supplemented by warehouse receipts, in which one accused of selling intoxicating liquors, or of keeping such liquors on hand at his place of business, has acknowledged the delivery to himself of such intoxicating liquors, may supply a circumstance of such relevancy as to render these papers admissible in evidence.

8. The fact that one who was behind the counter of a "near beer" saloon sold whisky, without hindrance or protest from the proprietor of the saloon or any agent of the proprietor, may authorize the inference that in making the sale the seller was an agent of the proprietor; and it is certainly sufficient to place upon the proprietor the burden of showing that the seller was not in fact his agent.

9. The evidence authorized the verdict, and there was no error in refusing a new trial.

DECIDED JANUARY 20, 1915.

Indictment for misdemeanor; from Bibb superior court—Judge Mathews. July 2, 1914.

*W. A. McClellan, W. D. McNeil,* for plaintiff in error.
*John P. Ross, solicitor-general,* contra.

RUSSELL, C. J. The plaintiff in error was convicted of a violation of the prohibition law, and excepts to the judgment overruling his motion for a new trial. In addition to the usual general grounds, the motion is based upon a large number of special assignments of error. The last two grounds relate to the court's inquiry, in the hearing of the jury, as to whether counsel objected to the jury's dispersing, and to the action of the court in subsequently refusing to declare a mistrial. If the court should have declared a mistrial, naturally all the other proceedings of the trial were nugatory; and for this reason we shall consider the assignments of error in inverse order.

1. As appears from the certificate of the trial judge, before the inquiry which he addressed to counsel in the presence of the jury had been answered by either of them, and therefore before the jury could have been prejudiced by any objection made by either side, the court called counsel privately to the bench, and counsel for the defendant there agreed with the solicitor-general that the jury might disperse. A recess was then taken, and, upon the reassembling of the court (and after the jury had been retired), counsel for the defendant moved that a mistrial be declared. We are of the opinion that the refusal then to declare a mistrial was not such error as requires the grant of a new trial. The defendant could not have been prejudiced, even if counsel had objected to the jury's dispersing; for what was said on the subject by counsel was said in private consultation with the judge on the bench, and, so far as appears, not in the hearing of the jury, and the jury could not have known which of the parties objected. The statement of counsel for the plaintiff in error that it is well known that State's counsel rarely, if ever, objects to the separation of the jury during a recess, so far from being a matter of common knowledge, does not accord with our observation or experience; and we can not hold that the defendant was compelled to consent to the separation of the jury, through fear that he would be suspected of having been the party who objected in the private conference with the judge, and would thereby expose himself to the odium of having reflected upon the integrity of the jury. There is a manifest reason why the State's counsel would generally be less disposed than counsel for the accused to agree to a separation of the jury. Any attempt to influence in any way a juror in behalf of the State might by its disclosure result in a new trial if the defendant were convicted, whereas the disclosure of a successful attempt to influence a juror in behalf of the defendant would be fruitless after a verdict of acquittal. Naturally, therefore, the incentive for improper communication with jurors on the part of the accused or his friends is greater than on the part of the prosecution.

However, we need not rule as to whether the judge's inquiry was prejudicial in the present case, for it is clear to our minds that the defendant, by consenting to the dispersal of the jury instead of promptly moving at that time for a mistrial, waived any objections he might have had to the irregularity. See *Heavner* v. *Saeger*, 79

*Ga.* 472 (4 S. E. 767), and *Desverges* v. *Goette,* 121 *Ga.* 65 (48 S. E. 693). It has been more than once held that it is error for a judge to inquire in the hearing of the jury whether counsel have any objection to the dispersal of the jury, but it has also been held that under certain circumstances this judicial impropriety may not be of sufficient materiality to require the grant of a new trial. In *Lyman* v. *State,* 69 *Ga.* 404 (8), it was held that "to ask counsel publicly, in the presence of a jury trying a case, whether the jury should be allowed to disperse is error;" but the Supreme Court declined to grant a new trial on account of the judge's inquiry, because the jurors who heard it had not been impaneled. The assignment of error upon the overruling of the motion for mistrial in this case does not appear meritorious to us, because the impropriety or misconduct was not promptly brought to the attention of the court and the proper remedy was not invoked as soon as the irregularity was known. The point involved is similar in principle to that dealt with in the recent case of *Roberson* v. *State,* ante, 545 (83 S. E. 877); for although the latter case dealt only with the misconduct of jurors, the doctrine of waiver is applicable to any irregularity in the trial which is known to the party or his counsel. There is a time for all things, and a party can not blow both hot and cold.

2. In the 14th ground of the motion for a new trial it is insisted that the court erred in charging the jury as follows: "But even if he did not sell any and the evidence does not authorize you to find he did sell any of these liquors, why then, if he is guilty of the offense of keeping at his place of business any of these liquors prohibited by law, why then he is guilty, and you would be authorized to find him guilty." It is insisted that this instruction was erroneous for the reason there was no proof that the defendant ever kept alcoholic liquors at his place of business, and there was no evidence authorizing a charge upon that subject. The judge did not confine his instructions to "alcoholic liquors," but designated the fluids referred to as "any of these liquors prohibited by law." There was evidence that the defendant had, within the statutory period, kept on hand lager beer, as well as numerous beers whose trade names are not the subject of judicial cognizance and may not be known to be intoxicating. In the practical operation of the prohibition law, beer, or so called "near beer," assumes many

thinly veiled disguises in the attempt to evade the law, and the trial court could not judicially know that "Schlitz beer," "Cook's beer," or "Red Eagle beer" (the bottles or labels of which the jury did not see) was intoxicating, but the witness Leland Williams swore that he found lager beer in the defendant's place of business in November, 1913; and though this witness testified that he did not know whether lager beer, if drunk to excess, would intoxicate, the courts do know that it will have that effect. *Cripe* v. *State,* 4 *Ga. App.* 832 (62 S. E. 567); *Dent* v. *State,* 14 *Ga. App.* 269 (80 S. E. 548). The trial court, therefore, had the right, merely upon proof of the presence of lager beer in the defendant's place of business, to give the jury the instructions to which complaint is directed. Not only did this testimony authorize the instruction, but (under the act of 1911, Ga. Laws of 1911, p. 180) the possession of a revenue license or tax receipt, which was submitted to the jury without objection, made such prima facie evidence of guilt as was sufficient to place upon the defendant the burden of showing not only that he did not sell, but that he did not keep intoxicating liquors on hand at his place of business.

3, 4. In several assignments of error it is contended that the court erred in confining the jury, in their deliberations on the question of guilt or innocence of the defendant, to a consideration of the evidence only, and shut off entirely from consideration the defendant's statement to the court and jury, in arriving at a conclusion in the case. A review of the various excerpts to which exceptions are taken, in connection with the charge of the court as a whole, shows that these exceptions are without merit. It is true that the court told the jury that they were to determine the guilt or innocence of the accused by a consideration of the evidence, and did not couple the defendant's statement with this reference to the evidence; and also told them that it was for them to say whether, under the law as given in charge and "the evidence in the case," they were satisfied to a reasonable and moral certainty and beyond a reasonable doubt of the defendant's guilt,—again omitting mention of the defendant's statement. The court charged also: "Now, you take all the evidence in this case, for the purpose of finding out and coming to a conclusion as to whether or not this defendant is guilty either of selling or keeping at his place of business." This instruction is attacked on the ground that the court failed to re-

iterate that the jury might consider the defendant's statement, as well as on the ground, already discussed, that there was no evidence whatever showing that the defendant ever kept intoxicating liquors at his place of business. The statement of a defendant in a criminal case is not evidence, and the court is not required to charge the jury upon any theory arising solely out of the defendant's statement, in the absence of a timely and appropriate written request. The jurors are sworn to try the case according to the evidence, and no reference to the defendant's statement is included in a juror's oath. The instructions of the court in the present case, as to the jury's consideration of the evidence, and as to a reasonable doubt arising either from insufficiency of evidence or from the nature of the evidence itself, were full and correct; and the jury were told that in connection with the evidence they had the right to consider the prisoner's statement, and that if they saw fit to give it preference over the sworn evidence, they might do so. If it was desired to have the attention of the jury more specifically directed to the defendant's statement, appropriate instructions should have been requested. See *Early* v. *State,* 14 *Ga. App.* 467 (2), 469, and cases there cited. *Hart* v. *State,* 14 *Ga. App.* 714 (82 S. E. 164).

5. While complaining on the one hand that the judge, in referring to the evidence, did not reiterate the reference to the defendant's statement, the defendant nevertheless complains that, after having charged, "As to the question of his being guilty upon either one of the theories about which I have charged you, you look to all the evidence and all the circumstances in the case, all the evidence for and against," the judge erred in adding, "and in this connection you have the right to consider the defendant's statement." Immediately following this instruction, which was apparently intended merely as a prelude to what followed, the court gave in charge to the jury, in effect, the provisions of section 1036 of the Penal Code of 1910. The instruction complained of was not error, either for the reason that it deprived the jury of the right to consider the statement apart from the evidence, or that it tended to depreciate the statement of the accused, as is insisted. Manifestly it is the duty of the jury to consider the evidence, and the statement must be considered in comparison with the evidence. The statement may so contradict the evidence that if the jury (as is their right) give preference to the statement, the testimony will be ob-

literated; but unless the jury decide that they will disregard the testimony, both the testimony and the statement must be considered; and in this sense, no doubt, the court used the words "in this connection." It is true that the jury has the right to consider the defendant's statement apart from the evidence in the case, and may base their verdict upon the defendant's statement alone, even though it be unsupported by any evidence; but this can not be done until they have considered the evidence along with or in connection with the statement, and have determined to give preference to the statement and to disregard the testimony as incredible and unreliable.

6. In the absence of an appropriate and timely written request for additional instructions, the charge of the court upon the subject of reasonable doubt was not erroneous for any of the reasons assigned. Upon this subject the court charged: "Now a reasonable doubt is not a mere conjecture, not a mere fancy, but it is a doubt that grows out of the consideration of the evidence in the case." It is insisted that the latter sentence of this charge instructed the jury that a reasonable doubt could only arise from a consideration of the evidence, whereas under the law a reasonable doubt may arise from the evidence, or from the evidence and the defendant's statement, or from the lack of evidence, or from the defendant's statement; and further it is contended that this instruction was error because it limited the origin of a reasonable doubt to the evidence, whereas such a doubt may arise from the defendant's statement disassociated from the evidence. The instruction of which complaint is made was immediately followed by the following instruction, of which it was a part: "It is your duty to take all the evidence in the case and consider it with care, without prejudice or bias for or against the defendant, and, after you have done that, say whether or not there is in your minds a doubt, a reasonable doubt growing out of a reasonable consideration of the evidence in the case, either on account of the want of evidence or the insufficiency of evidence, or on account of the nature of the evidence itself." From this it appears that the contention of the plaintiff in error merely resolves itself into a complaint that the court, in instructing as to a reasonable doubt, did not specifically refer to the defendant's statement. We have heretofore ruled upon this point, but it may be added that since the judge told the

jury that a reasonable doubt might be raised either by the "insufficiency of the evidence" or on account of the nature of the evidence itself, it is manifest that the charge permitted the jury to give preference to the defendant's statement, as to which they were elsewhere fully and correctly instructed. Upon this subject see *Early* v. *State,* supra, and *Hart* v. *State,* supra.

7. Error is assigned upon the admission of a number of bills of lading in which the defendant was the consignee, and of a number of warehouse receipts purporting to have been signed by the defendant. It is insisted that the bills of lading were irrelevant, and that there was no proof that they were correct, and that they are declarations of third persons not under oath, mere hearsay, and not binding on the defendant; and the warehouse receipts were objected to upon the same ground. It appears from the record that the bills of lading were presented by the defendant, and upon their presentation he was given an order on the Southern Railway Warehouse in Macon for what purported to be whisky, and the several shipments were delivered in his presence, and the receipts for the shipments were signed by him. The bills of lading recited that they were for shipments of whisky; and the warehouse receipts recited that the packages receipted for contained whisky. The defendant, by endorsing the bills of lading and signing receipts for the packages, admitted that the packages contained whisky. This court has more than once held that receipt of shipments of unusual quantities of liquor is a circumstance of more or less probative value for the consideration of the jury; and we find no error in the admission of the papers to which objection is made.

8. It was contended that the evidence was not sufficient to authorize the conviction of the accused of selling intoxicating liquors, and that the State affirmatively proved that the party making the sale was not the agent nor in the employ of the defendant, for the reason that a witness introduced by the State swore that he was the only clerk employed by the defendant, and that he did not make the alleged sale. It was argued that the inevitable conclusion was that the man who sold the whisky was an outsider who happened to be in the store of the accused at the time, and made the sale there for himself or for some undisclosed principal occupying some nearby building. The jury were not bound to credit all or any of the testimony of the witness referred to, and the State was not so bound

as to be unable to dispute testimony of this witness in conflict with the testimony of any other witness. *Amorous* v. *State,* 1 *Ga. App.* 313 (57 S. E. 999). The testimony of one of the State's witnesses was to the effect that the man who sold him the bottle of whisky delivered it and accepted the money in return, from behind the counter of the defendant's place of business. The transaction was in broad daylight and in a store situated on a public street of a populous city. From the fact that the sale was made without hindrance, molestation, or protest on the part of Bailey, the defendant's clerk and his agent (if, as he says, he was the only clerk), we are of the opinion that the jury were authorized to infer that the seller was an agent for whose sale the defendant was liable as accessory; and since in misdemeanors there are no accessories, but all are principals, the sale by this temporary occupant of the counter can be treated as the act of the principal. The circumstances were certainly sufficient to raise such a presumption that the actual seller was an agent of the defendant as to shift the burden and call for explanation at his hands and proof of the fact that the party making the sale was not his agent. But even if the seller was not an agent of the principal, the evidence amply warranted the conviction, because there was sufficient evidence (for reasons already stated) to have supported the conclusion that the defendant was guilty of keeping intoxicating liquors at his place of business; and since both offenses are charged in a single count, evidence sufficient to carry conviction of the guilt of the accused either of selling or of keeping on hand at his place of business would support the conviction and a general verdict of guilty. *Tooke* v. *State,* 4 *Ga. App.* 495 (61 S. E. 917); *Hall* v. *State,* 8 *Ga. App.* 747 (70 S. E. 211). Of course, the case would be quite different if the selling had been charged in one count, and the keeping on hand in a separate and distinct count. In that event the general verdict of guilty could not be supported unless the evidence was sufficient to authorize conviction of both, and not merely of one of these two congruous offenses.          *Judgment affirmed.   Broyles, J., not presiding.*